Ranchor Harris Law, PLLC
S. Ranchor Harris, ESQ (N.C. Bar No. 21022)
ranchor@ranchorharris.com
1784 Heritage Center Drive, Suite 204-E
Wake Forest, NC 27587
Telephone: 919-249-5006
Facsimile: 919-289-4845

Law Office of Robert P. Karwin
Robert Karwin, ESQ (State Bar No. 190573)
rkarwin@karwinlaw.com
29800 Bradley Road
Menifee, CA 92584
Telephone: 951-246-4514
Facsimile: 951-346-3684

Attorneys for Plaintiffs,
Matthew Capelouto, Stop Drug Homicide

## IN THE UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| MATTHEW CAPELOUTO, STOP DRUG HOMICIDE, | ) |
| | ) |
| Plaintiff(s), | ) Case No.: |
| | ) |
| vs. | ) |
| | ) |
| THERESA ALMANZA, DOES 1 through 10, inclusive, | ) **COMPLAINT FOR DAMAGES** |
| | ) |
| | ) |
| | ) **JURY TRIAL DEMANDED** |
| Defendant(s). | ) |
| | ) |
| | ) |

<u>**TO THIS HONORABLE COURT AND ALL INTERESTED PARIES:**</u>

- 1 -
COMPLAINT

Plaintiff Matthew Capelouto and Plaintiff Stop Drug Homicide prosecutes the following claims against Defendant Theresa Almanza and DOES 1-10.

## **NATURE OF THE ACTION**

1. This defamation action arises from numerous false and defaming statements made by Defendant Theresa Almanza (hereinafter "Ms. Almanza") and other individuals in regard to Plaintiff Matthew Capelouto (hereinafter "Mr. Capelouto") and Plaintiff Stop Drug Homicide (hereinafter "Stop Drug Homicide").

2. Statements were made in numerous videos produced by Texas Pictures (hereinafter "Texas Pictures") along with numerous statements posted on social media pages.

3. Texas Pictures is owned and operated by Glen Muse (hereinafter "Mr. Muse"). The videos were produced by Mr. Muse and published on the public website known as YouTube.

4. Ms. Almanza made accusations of Mr. Capelouto that include but are not limited to that he acted in criminal and/or immoral acts when Ms. Almanza confronted him about his act the group Drug Induced Homicide and its' bank account.

## **PARTIES**

1. Mr. Capelouto is a citizen and resident of Temecula, Riverside County, California.

2. Mr. Capelouto is a private citizen.

3. Mr. Capelouto is the President of a non-profit corporation, Stop Drug Homicide, organized in the state of California under 501(c)(3).

4. Mr. Capelouto is the former President of Drug Induced Homicide, Inc., and the organizer and founder of the corporate entity.

5. Stop Drug Homicide is non-profit corporation existing under the laws of the state of California with Mr. Capelouto serving as the president.

6. Ms. Almanza is a citizen and resident of Berrien County, Michigan.

7. Ms. Almanza originated a Facebook group called Drug Induced Homicide in the time between 2015 and 2019.

8. Drug Induced Homicide, Inc. has Facebook groups in various states now, but it did not exist as a corporate entity prior to 2020 when Mr. Capelouto registered the name and incorporated it as a non-profit corporation in California.

9. Ms. Almanza's main Facebook group, Drug Induced Homicide Inc., which is a public group, currently has approximately 14,000 members.

## NATURE OF THE CASE

10. Ms. Almanza has knowingly stated false information and made false and defamatory statements about Mr. Capelouto starting on June 26, 2024, and running to the present on YouTube and in social media posts on various platforms to portray Mr. Capelouto as an individual who committed criminal and immoral acts against the non-profit.

11. Ms. Almanza statements have caused general and pecuniary damage to Mr. Capelouto's reputation in the community in his individual capacity and in his official capacity as President of Stop Drug Homicide.

## JURSIDICTION AND CALIFORNIA'S LONG ARM STATUTE

12. Jurisdiction is proper pursuant to 28 U.S.C. § 1332 for diversity of citizenship as the parties to this action are citizens of different States.

13. The amount in controversy exceeds $75,000.00.

14. Ms. Almanza has availed herself of the laws and jurisdiction of the state of California through her contacts with the state including but not limited to:

   a. Filling a police report as the primary complainant with the Riverside Sheriff's Department accusing Mr. Capelouto of committing embezzlement;

   b. Contacting Riverside Sheriff's Department through Facebook posts;

c.  **Contacting** Attorney General Rob Bonta through Facebook posts;

d.  Contacting Riverside County District Attorney Mike Hestrin through Facebook posts;

e.  Representing herself as a board member of Drug Induced Homocide, Inc. which at the time was a California non-profit established by Matt Capelouto;

f.  Assisting in raising money for Drug Induced Homocide, Inc.

15. Based upon Ms. Alamanza's conduct, she has availed herself of the laws and jurisdiction of the state of California based upon these contacts.

16. As a result, personal jurisdiction and subject matter jurisdiction are appropriately before the federal courts of California.

## VENUE

17. This Court has jurisdiction over this action under 28 U.S.C. § 1331(b)(2) in that all or a substantial part of the events or omissions giving rise to the claim occurred within this district.

## STATEMENT OF FACTS

18. Ms. Almanza created a Facebook group called Drug Induced Homicide prior to 2020.

19. Mr. Capelouto connected with Ms. Almanza in early 2020 after Mr. Capelouto's daughter, Ms. Alexandra Capelouto, tragically passed away from a fentanyl poisoning.

20. In early 2020, Mr. Capelouto approached Ms. Almanza about creating a non-profit to expand the reach of the organization to others who had experienced losing a loved one to fentanyl.

21. Ms. Almanza was not interested in starting up a non-profit nor in being part of the board or organization.

22. Even though Ms. Almanza held no ownership interest in the name Drug Induced Homicide, Mr. Capelouto asked Ms. Almanza if she would agree to him using the name to create the non-profit organization. Ms. Almanza agreed.

23. Mr. Capelouto filed for the Drug Induced Homicide non-profit (hereinafter "the non-profit) in California in early 2020.

24. The non-profit listed Mr. Capelouto and his wife, Mrs. Christine Capelouto, as the initial officers and board members.

25. In 2023 Mr. David Erskine joined the board.

26. During the first year or two of its existence, the non-profit raised minimal amounts of money.

27. By the end of 2022 and the beginning of 2023, the non-profit started securing charitable donations.

28. Although Ms. Almanza was not nor ever formally involved in the non-profit, during this time she did assist in raising money for the non-profit.

29. In late 2020 into 2021, Journalists begun to report on Alexandra's Law and subsequently the non-profit. In doing so, upon their own doing, journalist begun referring to Mr. Capelouto as the founder of the non-profit versus the president.

30. On November 5, 2024, Mr. Capelouto was successful in having "Alexandra's Law" passed in California, which attracted a lot of media attention towards him and subsequently the non-profit.

31. In 2024 Ms. Almanza wanted to bring other people on to help with the non-profit.

32. Mr. Capelouto was not completely comfortable with the individuals with whom Ms. Almanza wished to bring on, which resulted in tension to grow between Ms. Almanza and Mr. Capelouto.

33. In May 2024, Mr. Capelouto received a call from Ms. Almanza to which she accused Mr. Capelouto of stealing money raised for the non-profit to fund his own, independent from the non-profit, business.

COMPLAINT

34. Mr. Capelouto informed Ms. Almanza that this accusation was false and requested to know who informed of her such false information.

35. Ms. Almanza refused to identify the source of the information or how this person claimed to have any knowledge.

36. Ms. Almanza requested that Ms. Dawn Beitzel Allen (hereinafter "Ms. Beitzel Allen") be added to the non-profit bank account.

37. At this point Mr. Capelouto was the only individual with access to the non-profit bank account.

38. In an effort to resolve the false accusation, keep things civil, and add more transparency, Mr. Capelouto agreed to add Ms. Beitzel Allen to the bank account.

39. Ms. Beitzel Allen begun to review the non-profit bank account and found no evidence to support the accusation that Mr. Capelouto was stealing funds.

40. Ms. Beitzel Allen and the other individuals Ms. Almanza brought into the non-profit begun to make further false accusations against Mr. Capelouto and the non-profit bank account which resulted Mr. Capelouto retaining an attorney.

41. The attorney informed Mr. Capelouto to remove Ms. Beitzel Allen from the bank account and to freeze the account until things could be resolved.

42. Upon receiving this information and making the decision to freeze the account, Mr. Capelouto called Ms. Beitzel Allen and informed her she would be removed from the account and that it would be frozen.

43. On June 26, 2024, only days after Mr. Capelouto informed Ms. Beitzel Allen of being removed from the non-profit bank account and that it would be frozen, Ms. Almanza posted false and defamatory statements to the Drug Induced Homicide Facebook page.

44. Ms. Almanza stated that Mr. Capelouto intentionally and maliciously acted in ways to harm the non-profit, "*deactivated our website and our ability to recover. In addition, Matt has created a separate "Drug Homicide" website and private "Stop Drug Homicide California" Facebook page. These actions were designed to mimic our foundation's identity by omitting the term "Induced," with the clear intent of undermining our foundation.*"



    a.

45. Further, Ms. Almanza stated that Mr. Capelouto seized the non-profits money and alluded that he had done so illegally, "*Additionally, it's with regret we inform you that all funds raised in support of Drug Induced Homicide have been seized by Matt Capelouto.*"

In addition, Matt has created a separate "Drug Homicide" website and private "Stop Drug Homicide California" Facebook page. These actions were designed to mimic our foundation's identity by omitting the term "Induced," with the clear intent of undermining our foundation.

Additionally, it's with regret we inform you that all funds raised in support of Drug Induced Homicide have been seized by Matt Capelouto.

We are dedicated to addressing these issues promptly and transparently. Further updates will be provided as we work through these challenges. We appreciate the continued support and understanding of our community during this period of restructuring.

I am ashamed & overwhelmed with regret that I entrusted this man with the foundation we built in honor of the victims lost.

Also, I apologize for the delay in updating DIH state chapter reps as I am healing from a double mastectomy.  Thank you to our amazing board for stepping up during this critical time.

Our advocacy is not defined by a website or a Facebook group, but by the commitment and hearts of the survivors we serve.

Matthew Capelouto's actions to appropriate something that never belonged to him clearly reflect his true intentions and his alignment with the values of the Drug Induced Homicide Foundation. While there is more to this story, I felt it was necessary to provide you with an update on the current status of our foundation.

I am deeply sorry.

Terry Almanza, Founder
Drug Induced Homicide Foundation

a.

46. In closing out her post, Ms. Almanza made a statement to allude that Mr. Capelouto never had permission to use the name Drug Induced Homicide and that his intentions have always been harmful, *"Matthew Capelouto's actions to appropriate something that never belonged to him clearly reflect his true intentions and his alignment with the values of the Drug Induced Homicide Foundation."*

47. Ms. Almanza failed to inform the members of the Facebook group Drug Induced Homicide, Inc – Public that she had given Mr. Capelouto the permission to create a non-profit with the name Drug Induced Homicide, declined to be involved in working of the non-profit, and that

Mr. Capelouto immediately agreed to stop using the name Drug Induced Homicide at her request.

48. Mr. Capelouto dissolved the non-profit Drug Induced Homicide, Inc. and incorporated Stop Drug Homicide.

49. Mr. Capelouto made an offer to Ms. Almanza, which included transferring the domain name of druginducedhomicide.org to Ms. Almanza, a 50/50 split of frozen non-profit bank account and for each to sign a non-disparagement agreement.

50. Ms. Almanza denied the offer as she wanted the full balance of the non-profit bank account and only wanted the passwords to accounts not to be listed on said accounts.

51. Mr. Capelouto made the decision not to respond to Ms. Almanza's inappropriate request.

52. On or about early 2025 Ms. Almanza filed a false report with the Riverside County Sheriff's Department stating Mr. Capelouto had acted in a criminal manner in regards to the non-profit.

53. As a result of the false police report, the non-profit bank account was frozen.

54. On August 7, 2024, Ms. Almanza stated in a post that Mr. Capelouto had *"hijacked"* the non-profit and caused them to lose their 501(c)3 status, domain, and over $60,000.00 in donations, *"...hijacked and rebranded as a California based foundation titled Stop Drug Homicide California by a former board member. These despicable actions have resulted in the loss our 501(c)3 status, its domain, over $60,000 in donations and much more. The former board member rebranding our EIN # to his new California based foundation..."*

a.


COMPLAINT

1
2
3
4
5
6
7
8
9

> It is with great sadness that I share with my supporters that the Drug Induced Homicide foundation that I founded in 2015 in honor of my daughter Sydney and the countless victims of illicit drug poisonings has been hijacked and rebranded as a California based foundation titled Stop Drug Homicide California by a former board member. These despicable actions have resulted in the loss our 501(c)3 status, its domain, over $60,000 in donations and much more. The former board member rebranding our EIN # to his new California based foundation which currently directs our followers to his foundation when searching our website or scanning our QR code.
>
> In June 2024, this board member was removed from our board after refusing to amend the Articles of Incorporation updating our board members as he conveniently omitted the organization's founder (Me) and dedicated board members Kristy Dyroff, Dawn Angelina Beitzel Allen, Rachel Carlisle & Kim Novak from our 501(c)3, he failed to produce financial statements during his tenure with the foundation in which he handled all of the finances and stalled the transition when a new treasurer was voted on "freezing" the accounts. Multiple emergency board meetings were called and the former board member refused to participate in meetings regarding these serious concerns. Days later, former board member emailed a YouTube video to an active board member titled, "Can You Vote Out A Nonprofit Founder?" The board agreed that it was his intentions to take control of the foundation from its founder by voting the me out. At this point, he was voted off the board and given written

b.    and verbal notice of his removal from the board in a recorded Zoom call.

55. Ms. Almanza falsely stated in her post that Mr. Capelouto *"…conveniently omitted the organization's founder (Me) and dedicated board members…"* when in reality Ms. Almanza informed Mr. Capelouto at the filing of the non-profit that she did not wish to be a part of the board or apart of the non-profit in any formal capacity.

56. Additionally, Ms. Almanza stated that Mr. Capelouto *"was voted off the board and given written and verbal notice of his removal from the board in a recorded Zoom call"* and *"Drug Induced Homicide Foundation has been rebranded to a California based foundation titled Stop Drug Homicide utilizing the same EIN # 85-0772680 without authorization of its board…"* Ms. Almanza nor any of the other individuals that participated in this meeting, or claim to be a part of the board, have ever been formally apart of the non-profit board.

> Drug Induced Homicide Foundation has been rebranded to a California based foundation titled Stop Drug Homicide utilizing the same EIN #85-0772680 without authorization of its board or Drug Induced Homicide Foundation donors, supporters & community.    California based foundation Stop Drug Homicide, founded Matt Capelouto vs Drug Induced Homicide, founded Theresa Almanza.
>
> The Drug Induced Homicide Foundation was founded in 2015 by Theresa Almanza, a 28 year veteran and decorated officer of the Chicago Police Department. I sincerely apologize for my lack of judgement and deeply regret entrusting this individual in our advocacy. Thank you for your continued support and understanding as we navigate this challenging time. I am sorry that this issue was shared within this platform but our supporters deserve answers as to the noticeable change.
>
> I will gladly provide any one with proof of listed details.

a.    We encourage any suggestions in resolving this matter without further incident. Please #SHARE post

57. Mr. Capelouto could not be voted off the board by individuals that were not formally a part of the board, nor could he receive permission from these same individuals. Ms. Almanza intentionally left this information out of her post in an effort to portray herself in a light more favorable to the members of the Drug Induced Homicide group.

58. To further support Ms. Almanza's narrative that the board had voted Mr. Capelouto off, false minutes were created for the alleged meeting on June 16, 2024.

59. On August 26, 2024, Ms. Almanza post on the Drug-Induced Homicide Foundation Facebook page directed to Mr. Capelouto accusing him of stealing the EIN #, website, and donations from Drug Induced Homicide, Inc., *"Matt Capelouto, How would you feel if someone you trusted came along and stole what you & your supporters created in honor of your late daughter Alexandra? Please restore the EIN #85-0772680 from Stop Drug Homicide California back to its rightful owner Drug Induced Homicide Foundation Inc., our website www.druginducedhomicide.org, and the donations raised by our supporters."*



a.

60. As a result of Ms. Almanza's post, Ms. Alice Arnold posted on her personal Facebook page

defaming and threatening statement about and to Mr. Capelouto, *"Ter Bear created this*

1  *group an a "POS" stole it all from her!!"* and *"Matt Capelouto u will get whats coming to*

2  *you. You don't know who your messing with!!"*

3

4

5

**Alice Arnold's post**                                    ✕

Alice Arnold
August 26, 2024 · 🌐

This??! Just Terrible. Please share. Ter Bear created this group an a "POS" stole it all from her!! How
can this happen?!! Ter 🐻 bear
I am Deeply sorry this happened to you.
PLEASE  Read her Post....
KARMA IS A BITCH!!
Matt Capelouto u will get whats coming to you. You dont kno who your messing with!!
LOVE U  Ter bear! 🔫 💛 🖤
Terry Almanza💜

Smiles...
8 · 😵

please consider donating to our cause. We are currentl
r that represents the 3,244 days we've endured since
r Facebook Fundraiser ends on May 31st, the annivers

a.

61. The following day, August 27, 2024, Ms. Rachel Carlisle (hereinafter "Ms. Carlisle") shared Ms. Almanza's post from August 26, 2024, and urged others to read Ms. Almanza's current false post and any other's she had made.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Rachel Carlisle** ✔ · Follow
August 27, 2024 · 🌐

If Ter Bear has ever helped you and supported you then please please share her post ....

If you are unaware of what is happening then please take the time to read through her posts ...

Our warrior friend and the founder of Drug-Induced Homicide Foundation needs us ...
What has been done to her and the organization that has shown us to turn our pain into purpose
has been stolen along with money raised....

She is always supporting us ...
Always there for us ...
Always there to guide us ..
Now it's our turn to be here for her...
And to fight for her ...

So please share .....
DO THE RIGHT THING MATT.....
@highlight

---

**Drug-Induced Homicide Foundation**
Published by Ter Bear
🌐
· Just now · 🌐

Matt Capelouto,
How would you feel if someone you trusted came along and stole what you &
your supporters created in honor of your late daughter Alexandra? Please restore
the EIN #85-0772680 from Stop Drug Homicide California back to its rightful
owner to Drug Induced Homicide Foundation Inc., our website
www.druginducedhomicide.org and the donations raised by our supporters.
Sydney's Mom, Forever 18
Drug Induced Homicide Foundation, Founder

## Alexandra's Law

*"You are hereby advised that it is extremely dangerous and
deadly to human life to illicitly manufacture, distribute,
sell, furnish, administer, or give away any drugs in any
form, including real or counterfeit drugs or pills. You can
kill someone by engaging in such conduct. All drugs and
counterfeit pills are dangerous to human life. These
substances alone, or mixed, kill human beings in very
small doses. If you illicitly manufacture, distribute, sell,
furnish administer, or give away any real or counterfeit
drugs or pills, and that conduct results in the death of a
human being, you could be charged with homicide, up to
and including the crime of murder, within the meaning of
Section 187 of the Penal Code."*

---

**Ter Bear**
August 26, 2024 · 🌐

Matt Capelouto,

Do the right thing!

Restore EIN #85-0772680 from Stop Drug Homicide California to its rightful owner, the Drug-
Induced Homicide Foundation. Return our website, www.druginducedhomicide.org, and the
donations entrusted to our mission.

How would you feel if another bereaved parent, someone you trusted, stole what you built in
honor of your late daughter, Alexandra?

What you have taken represents more than just a foundation. It's the legacy of the victims, the
pain of countless families, and the hope we strive to create from our collective advocacy. Your
actions have torn apart the very thing that was meant to support families nationwide.

Make this right. Restore what you have wrongfully claimed, and honor the memory of all our
loved ones by doing what is just.

You can threaten me with lawsuits, cease and desist letters but I will not be silenced regarding
my advocacy.  You should know that by now!!

#druginducedhomicidefoundation

*Sydney's Mom*

**Please hit the share tab**

                                    15 comments  5 shares

👍 Like          💬 Send          ↪ Share

1     a.

2

3   62. A few days later, Ms. Carlisle continued to help spread Ms. Almanza's false narrative that

4       Mr. Capelouto stole the EIN # from the non-profit by sharing a photo of the Stop Drug

5       Homicide Facebook page and stated that Mr. Capelouto was spreading lies, *"My Grieving*

6       *Parents please, please don't fall for this individuals agenda…. It is all lies that he is*

7       *spreading…"*

8

9     

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    a.

25  63. On September 20, 2024, Ms. Almanza made a post on the Drug Induced Homicide Inc.

26      Facebook page and made false claims to Attorney General Rob Bonta, Mike Hestrin,

27

28                                    - 15 -

Riverside County District Attorney, IRS, and the Drug Induced Homicide Community by "tagging" their names and/or pages in the post.

64. In the post, Ms. Almanza falsely stated that Mr. Capelouto *"illegally rebranded the Drug-Induced Homicide foundation to "Stop Drug Homicide California" without authorization,"* *"misappropriated over $60,000 in donations,"* *"spread false claims about the foundation's origins,"* and *"concealed the foundation's financial history."*


**Drug Induced Homicide Inc.**
September 20, 2024 · 🌐

**Attorney General Rob Bonta,**
**Mike Hestrin, Riverside County District Attorney,**
**IRS,**
**Drug-Induced Homicide** Community,
I write to urgently address the unlawful actions of California resident Matt Capelouto, who has illegally rebranded the Drug-Induced Homicide Foundation to "**Stop Drug Homicide California**" without authorization. In doing so, he has misappropriated over $60,000 in donations from our supporters and spread false claims about the foundation's origins, discrediting its true founder, Theresa Almanza AKA Ter Bear. Mr. Capelouto has concealed the foundation's financial history while fabricating his own false narrative that its founder was nothing more than a social media influencer playing no role in the non profit.  Ironic that it was Matt Capelouto coming to its founder for support & guidance in his daughter's case.
His actions have severely disrupted our advocacy efforts. All of our foundation's materials—tents, tablecloths, signs, banners, literature, business cards, lanyards, and apparel—bear the website and QR code that he has illegally rebranded for his own foundation. Mr. Capelouto continues to hold these essential items hostage, using them as leverage to coerce the founder into signing a nondisclosure agreement aimed at concealing his misappropriation of funds and years of non-compliance.
We've included irrefutable evidence showing that our domain was purchased by Theresa Almanza in July 2019. This timeline makes it impossible for Mr. Capelouto to claim ownership, as the tragic loss of his daughter did not occur until December 2019.
The Drug-Induced Homicide Foundation was founded in 2015 by Theresa Almanza in honor of her daughter Sydney, who was a victim of an illicit drug poisoning. The Drug-Induced Homicide Foundation has been a beacon for countless families devastated by illicit drugs. It is unconscionable for anyone—especially a fellow grieving parent—to hijack this foundation, dishonoring the memory of the many lives lost and the survivors advocating for justice inflicting unnecessary harm on the very cause we all seek to champion.
I respectfully urge the IRS, Attorney General Bonta, and District Attorney Hestrin to investigate these serious grievances and act to restore the foundation's rightful status. Complaints have been duly lodged with the IRS and the California Attorney General's office. I trust in your offices to uphold justice and integrity in addressing this grave issue.

a. VAPCZTAhpkm1IFG... our prompt attention to this critical matter.

65. On October 5, 2024, Ms. Carlisle made a post on her personal Facebook page regarding Mr. Capelouto.

66. In her post, Ms. Carlisle falsely stated that Mr. Capelouto *"refuses to return our domain, 501(c)3 and produce full accounting records. We have identified donations exceeding $50K*

- 16 -
COMPLAINT

*and unknown profit he gained selling DIH merchandise from his business without giving a penny to DIH despite his false advertisement....”*



67. As a result of Ms. Carlisle's false post, numerous individuals shared the post and made false and defamatory statements regarding Mr. Capelouto.

68. Further, Ms. Almanza also shared Ms. Carlisle's post and added further false statements to include that Mr. Capelouto was removed from the board, sized donations, and deactivated the domain, *“...following the removal of Matt Capelouto from the board. His actions – seizing donations and deactivating our domain – have severely hinder our mission to support families and collaborate with the judicia system to fight to save lives.”*



a.

69. On October 25, 2024, Ms. Almanza posted to the Drug Induced Homicide Inc Facebook page that due to the cost and time of a lawsuit against Mr. Capelouto, she has decided to *"participate in a Texas Pictures documentary exposing Matt's actions…"*

a.
> **Drug Induced Homicide Inc.**
> October 25, 2024 · 🌐
>
> Supporters,
> I wanted to take a moment to address a few concerns that have been brought to my attention regarding the recent public statements and actions we have taken in response to the situation involving former board member Matt Capelouto. We understand that some of you have suggested handling this matter privately and through the courts, and we appreciate your feedback. Rest assured that we have thoroughly considered all options and have consulted with legal counsel on the best course of action. Attorneys have indicated that a case of this extent will exceed $50,000 and likely take years to settle. The decision to speak out publicly and participate in a Texas Pictures documentary exposing Matt's actions was not taken lightly, but we believe it is important to uphold transparency and protect the integrity of our organization as well as warn others that may fall victim to Matt. Despite our efforts to seek justice through established channels such as the IRS, Attorney General Rob Bonta, and Mike Hestrin, Riverside County District Attorney, our patience has been tested as we patiently await an investigation. We have encountered challenges and faced obstacles that have prolonged the process of holding Matt accountable for his actions. I want to assure you that the decision to go public with this matter was made in the best interest of our community and the individuals we serve. It is our responsibility to bring awareness to situations where trust has been violated and to protect the resources and efforts of our advocates. I want to express my sincere gratitude for your continued support and understanding during this challenging time. Your dedication to our cause and unwavering commitment to justice is truly appreciated. We will continue to work diligently to recover what was stolen and to ensure that our organization can move forward in a positive direction. Thank you for standing with us and for your ongoing support as we navigate through this difficult situation. Together, we will overcome these challenges and emerge stronger than before.
> A true ally stands up for you in rooms you aren't in.
>
> Regards,
> Drug Induced Homicide Inc.
>
> CC'd
> Riverside County Sheriff's Office

70. Additionally, on October 25, 2024, Ms. Almanza shared a video to the social media platform *TikTok* which encapsulates a small portion of an interview of Mr. Capelouto where he was quick to correct the interviewer when he assumed Mr. Capelouto was the founder of the Drug Induced Homicide. Ms. Almanza spun Mr. Capelouto's truthfulness into a negative light by adding the statement with the video that Mr. Capelouto stole *"…$60,000 in foundation funds, deactivated our domain, rebranded our non-profit and falsely advertised a portion of his business sales of DIH merchandise were donated to DIH. Lies!"*

Terry Almanza
is the founder of the
Drug Induced Homicide
organization
Not Matt Capelouto

#DOTHERIGHTTHINGMATT

**druginducedhomicide**
Drug Induced Homicide Inc · 2024-10-25    Follow

Proceed with causation when allowing Matt Capelouto
Into your circle. He has stolen $60,000 in foundation funds, rebranded our
nonprofit and falsely advertised a portion of his business sales of DIH merchandise were donated to
DIH. Lies! #druginducedhomicide #riversidecountydistrictattorney #californiaattorneygeneral

a.

71. Ms. Almanza, Ms. April Babcock, Ms. Julie Baumgarten, Ms. Rachel Carlisle, and Ms. Dawn Beitzel Allen all participated in recording false and defamatory statements regarding Mr. Capelouto.

72. Ms. Almanza shared the video recording with Mr. Muse and Texas Pictures.

73. On November 18, 2024, Texas Pictures released *DIH – statements* on their YouTube channel.

74. Ms. April Babcock falsely stated that Mr. Capelouto stole the non-profit. Ms. Babcock's statements are clearly evident that she is solely relying on the information she is provided by Ms. Almanza and/or other third parties.

a.

75. Further, Ms. Babcock falsely stated that Mr. Capelouto *"took the website"* from Ms.

Almanza during a time she was vulnerable, intentionally attempting to paint Mr. Capelouto

as uncaring and malicious individual.



a.

76. During the video Ms. Julie Baumgarten falsely stated that Mr. Capelouto took the non-

profit's EIN number and donated money.



a.

77. Ms. Rachel Carlisle falsely stated during the video that she was asked to become a part of

the board. Ms. Carlisle agreed to become a part of a board that was not formally established

within the non-profit.

a.

78. Ms. Dawn Beitzel Allen made numerous false statements during the video that she was brought on to the board as the board secretary, that Mr. Capelouto made the decision to name directors of the board that were not affiliated with the non-profit, that Mr. Capelouto falsely stated that he was donating proceeds from the non-profit merchandise to the non-profit, and that Mr. Capelouto was maliciously and intentionally taking control of the non-profit and the funds that had been raised.



a.



b.

c.

**17:41** was as well that when Matt filed for the nonprofit status he made the decision to

**17:48** uh name uh directors of the board that were not affiliated with the

**17:53** organization uh one being his spouse and the other being I believe a friend from college

d.

**22:24** time we were made aware that despite Matt having um

**22:30** advertised in social media posts as well as um leading uh language that was on

**22:35** the website that the Assumption was that the drug induce homicide Foundation merchandise that was um supported by

**22:43** Matt's personal business impulse apparel and Same Day t-shirt that um Matt was

**22:49** carving out uh some proceeds to go from the sale of those items to the organization supporting the organization

e.

**23:05** the board we felt that this was indicative of a a serious um conflict of

**23:11** interest and we made the request to Matt that he disabled the drug induced homicide store through the website so

**23:17** that people could not purchase items until we were able to determine what was the best next step to make sure that we

1

> **23:59** uh with everyone's knowledge and approval and during this meeting Terry

2

3

> **24:04** informed us that she had been approached by a member of the community who had

4

5

> **24:09** indicated that there were conversations being had and and information in

6

7

> **24:15** circulation that was indicating that Matt Caputo would be was connected with

8

9

> **24:20** some Financial improprieties as far as the organization goes and also that there had been knowledge of the fact

10

f.

11

> **24:27** that terel and the rest of the board did not show up on the Articles of Incorporation that were filed with the

12

13

> **24:34** IRS and that the um the assumptions were

14

15

> **24:39** that this was being done with the intention of Matt uh outing the founder

16

17

> **24:45** and taking and seizing the organization and taking full control of it Terry

18

19

> **24:50** approached Matt with these concerns um the board present um because this is

20

21

> **24:56** happening now at a point where we have identified this conflict of interest as well as following numerous months and

22

g.

23    79. As the video continued, Ms. Beitzel Allen continued with the false narrative surrounding an

24    alleged board meeting and that Mr. Capelouto was uncooperative in disabling the non-profit

25    merchandise store, that Mr. Capelouto had expressed during the board meeting that he

26    would not participate in any future board meeting with Kristy Dyroff (hereinafter "Mr.

27

28

Dyroff") insinuating that Mr. Capelouto was attempting to hide something as Ms. Dyroff had previously pushed the allegations that Mr. Capelouto had stolen the EIN number and the money from the non-profit.

a.

> **25:15** the tone of that meeting was tense there was definitely a strong undercurrent of
>
> **25:21** frustration that was tangible um in particular Christy dyro who again had
>
> **25:27** been affiliated with this organization since its Inception and who had been a vocal a very vocal component of these

b.

> **26:02** is the time now we now we have to worry about the reputation of the organization
>
> **26:07** being put into Jeopardy um as well as at this point now we're about a month out
>
> **26:12** from the discovery of the conflict of interest as it pertain to the uh the the the drug anded homicide
>
> **26:20** uh store through the website that was for the um uh drug induced homicide
>
> **26:26** merchandise and at this point Matt still was without a clear direction to rectify
>
> **26:31** that and he had not disabled the drug andu homicide store as we had agreed would happen at the end of the last
>
> **26:38** board meeting which again is reflected in minutes that

COMPLAINT

29:04    indicated that she would get everybody together to discuss this Matt explained to Terry that he had felt um attacked

29:12    and and was not comfortable and unwilling to participate in any future board meetings with Christy dof who had

29:19    really kind of Taken on the role of being the deliverer of the strong and

29:25    clear expectations that Matt Rectify these situations at

c.

29:38    line I think they both were agitated with one another that was evident but uh

29:44    Matt basically was indicating that he would not be moving forward as a board member alongside of Christi and that he would not come to this board meeting the

29:52    board meeting was held either way without Matt's participation he was invited and made aware of when and where

29:58    you know the zoom you know uh links would be available and at this point the board

30:05    started to kind of unpack what we felt was before us which at that time with

30:11    these these uh things in circulation being discussed

d.

80. Ms. Beitzel Allen continued her false statements in the *DIH – statements* video when she falsely stated that the board meeting went on without Mr. Capelouto even though he was given the opportunity to attend, that during the alleged board meeting it was decided for Ms. Almanza to try to reach out to Mr. Capelouto about trying to civilly move forward, that Mr.

Capelouto just wanted to run things his way and not be cooperative with others involved in the non-profit, and that he was against obtaining any grant funding for the non-profit.

a.

| 31:18 | and we were discussing what might happen with him being unwilling to move forward with Christy whether it was Christy |
|---|---|
| 31:25 | stepping down from the board whether it was Matt being removed from the board but that one way or the other this was a |
| 31:31 | conundrum that was going to require us you know navigating it um we ended that |
| 31:38 | meeting with the understanding that we would try and circle back that Terry was going to reach out to Matt we were going |
| 31:45 | to send him the uh recorded Zoom that we just had and and see kind of what that |

b.

| 33:53 | that you know he was kind of going to be in charge um I knew that that not how a |
|---|---|
| 33:58 | board works I had served on other nonprofit boards before and I knew that it was not a dictatorship um that it's a |
| 34:05 | democracy and that you know things are decided upon with the consent of a full |
| 34:11 | board um and so I was you know communicating from what Matt was saying |

| 36:32 | from what was clearly an agenda to to do something that did not serve its best |

| 36:39 | interest everyone was in agreement that Terry being the person who had managed |

| 36:44 | almost exclusively all the advocating within this organization outside of the |

| 36:50 | State of California where Matt um you know lived and kind of operated she was |

| 36:55 | the one who was doing a lot of the National support um and you know we were |

| 37:01 | at the time before this all went down we were already in the process of talking about seeking out grants to get some new |

| 37:08 | Advocates trained and familiarized within that role so that Terry could you know be able to not be spread so thin |

c.

| 37:22 | but it with the introduction of Fentanyl and with you know drug induced homicides really spiking |

| 37:28 | she was you know spread pretty thin and there were a lot of things that um she needed support on um Matt had indicated |

| 37:37 | to us when this was brought up that you know an in opposition of of seeking out |

| 37:43 | Grant funds that you know we really wanted to be careful not to have you know the um assets of the organization |

| 37:51 | exceed you know 50,000 in a year that once that happens um you know more |

d.

81. Ms. Beitzel Allen then falsely stated that while Mr. Capelouto did agree to add her to the
bank account and in turn giving her access to the financial information he never fully
followed through, that Mr. Capelouto removed Ms. Dyroff from the non-profit website and
removed her access to social media account without agreement from the board, and that he
intentionally did these things intentionally while Ms. Almanza was out due to a medical
emergency.

a.



| Time | Text |
|---|---|
| 39:13 | uh we kind of kicked into preservation mode uh christe and Rachel basically had |
| 39:20 | indicated that they would uh submit a contingent resignation to the board with the |
| 39:28 | expectation that Matt would have me added to the finances and get my information get all the financial |
| 39:34 | information into my hands so that if they did step away uh they did so with |
| 39:40 | peace of mind that at least you know some of these things that were really |
| 39:45 | you know we were on alert about were at least resolved um in their absence and |

**39:57** assess what the board what needed to happen with this board moving forward so with um that I informed Matt

**40:06** that Christy and Rachel were willing to step down from the board in the event that he were to cooperate in a complete

**40:14** giving me complete access to the finances of the organization Matt agreed that he would

**40:21** um you know accommodate this and started the process of having me added to the Chase bank account I provided him with

**40:28** my information and he went to the bank and started the process to have me added as an authorized S as the treasur of the

b.    **40:36** organization after Matt uh initiated this process but before it was actually

before it was actually

**40:42** completed Matt went about removing Christy dyro from the website as well as potentially

**40:49** interfering with um her uh status as a

**40:54** moderator for some of the uh social media accounts that she was you know a

**41:01** signed moderator for so preemptively without you know her her

**41:06** contingent um resignation in place he went about taking these steps I notified

**41:13** Matt that um I was not comfortable with him making those types of decisions uh

c.

41:19   that this is still a board and that they had not resigned yet and that anything he did at this point was going to

41:25   reflect directly on me and that when Terry returned from her medical emergency to half of her board missing

41:33   and you know that I wanted to be able to say in good faith that every decision that I participated in was done so with

41:40   the best interest of the organization at at the root of it and that um you know I

41:46   had gotten access to the finances and none of this could appear that it was coming from a place of you know uh you

41:54   know antagonistic or you know uh Matt you know having uh ill will towards

d.

42:00   chrisy and and operating with that at the root of his decisions and so you know I indicated to him that you know if

42:07   we were going to be managing responsibilities just the two of us until Terry returned that he needed to

42:14   make sure that he was incorporating me in decisions and that we were making these decisions jointly yet Matt

42:20   continued to maintain a stronghold on the finances by not getting me fully

42:25   added to the account and as well as not fully relinquishing the PayPal accounts

e.

82. Following the release of *DIH – statements*, on November 21, 2024, Texas Pictures released on YouTube *DIH – The Rift* which further defamed Mr. Capelouto and Stop Drug Homicide by continuing the false narrative that has been created by Ms. Almanza.

83. On December 2, 2024, Ms. Almanza falsely stated that Mr. Capelouto had *"blatant hijacking of our foundation"* and then proceeded to slander Mr. Capelouto and his company, "As we fight to rebuild what has been taken from us, personally fund our rebuild, he will be celebrated – likely in the company of individuals sworn to uphold the very justice we seek."

 Ter Bear is with **Riverside County District Attorney's Office** and **6 others**.
December 2, 2024 · 🌐

**#GivingTuesday**

While the Drug Induced Homicide Inc. continues to await justice for the blatant hijacking of our foundation, former board member Matt Capelouto is preparing to host a holiday celebration on December 15, 2024, at Luke's on Front in Temecula, California.

As we fight to rebuild what has been taken from us, personally fund our rebuild, he will be celebrated —likely in the company of individuals sworn to uphold the very justice we desperately seek. This disparity is not only disheartening but deeply unjust.

I struggle to comprehend how over $60,000 in donations could be seized, our domain deactivated, and our nonprofit effectively rebranded as Stop Drug Homicide by Matt Capelouto, with no apparent urgency from the agencies we've turned to for help. Despite presenting overwhelming evidence, we have been met with silence—crickets—from those charged with safeguarding organizations like ours from such predatory actions.

This is more than a matter of money or branding; it's about the trust placed in us by families seeking justice for their loved ones lost to illicit drug-induced poisonings. It is about the integrity of a mission built to serve grieving families and advocate for accountability.

To see our foundation's resources diverted and our work undermined while our pleas for justice remain unanswered is a painful blow—not just to me, but to all those who have supported our cause.

We remain steadfast in our fight for accountability, but we cannot do this alone. We call on our supporters to stand with us, to amplify our voice, and to demand action from the IRS, the Attorney General Rob Bonta, Riverside County District Attorney's Office & Riverside County Sheriff's Office. Justice delayed is justice denied, and the families we serve deserve better.

Fighting for justice should be an automatic given, yet here we are again—confronting silence and indifference. Recently, someone close to Matt shared a troubling sentiment: that he would never face prosecution in California due to his close relationships with law enforcement and prosecutors.

As a veteran law enforcement officer, I instinctively rejected that notion. I believed in the integrity of the system I served for nearly three decades. But now, in the face of inaction despite overwhelming evidence, I find myself questioning what I once held as truth.

a.   Justice must not be contingent on connections or privilege. It is the cornerstone of accountability.

84. Again, Ms. Almanza falsely stated that Mr. Capelouto illegally seized over $60,000.00 in donations, deactivated the non-profit domain, and wrongfully rebranded the non-profit, "I struggle to comprehend how over $60,000 in donations could be seized, our domain

deactivated, and our non-profit effectively rebranded as Stop Drug Homicide by Matt Capelouto…"

85. A few days later on December 14, 2024, Ms. Almanza continued her false statements by further spreading the same false narrative that Mr. Capelouto was an insensitive human and an imposter to the non-profit community as he was organizing a celebration at Lukes on Front in Temecula, California, "What type of person hosts a celebration in the midst of an investigation for fraud?" "Mr. Capelouto is planning a public celebration at Luke's on Front in Temecula, California, on Sunday, December 15, following his egregious hijacking of Drug Induced Homicide, Inc. Who hosts a public celebration after committing such horrific acts upon the community that entrusted him?" and "His actions undermine the very mission we uphold…"

**Drug Induced Homicide Inc.** is at Luke's on Front.
December 14, 2024 · Temecula · 🌐

What type of person hosts a celebration in the midst of an investigation for fraud?

Matt Capelouto of Stop Drug Homicide - Survivors Advocacy Group

Mr. Capelouto is planning a public celebration at Luke's on Front in Temecula, California, on Sunday, December 15th, following his egregious hijacking of Drug Induced Homicide, Inc. Who hosts a public celebration after committing such horrific acts upon the community that entrusted him? This blatant disregard for the pain and suffering experienced by the families we support is sickening and alarming.

The countless obstacles and hardships our foundation must now face due to Mr. Capelouto's choices are disheartening. His actions undermine the very mission we uphold and disregard the families we are dedicated to supporting. The cessation of events and celebrations that raise awareness about this critical issue is a significant setback for our community.

The appropriation of over $60,000 in nonprofit funds, along with the unlawful rebranding of our foundation, deactivation of domain, false donation claims on behalf of his personal businesses raises serious ethical and legal questions. Such behavior reflects a troubling lack of respect for the families we serve and the cause we champion. While Mr. Capelouto may celebrate his actions, it is imperative to remember that accountability is inevitable. We remain steadfast in our pursuit of justice and will not be silenced.

Furthermore, we reject any attempts to conceal these improprieties through financial means, including the proposed payoff of $25,500 contingent upon signing a non-disclosure agreement. Our commitment to transparency and the families we represent is unwavering. Whereas, Mr Capelouto remains silent sending his friend to answer to his wrongdoings without zero regard for her culpability in his web of lies.

As we navigate this challenging situation, we remain hopeful for resolution and are dedicated to continuing our vital work in the community. We invite others to join us in advocating for justice and accountability in the face of such misconduct.

Once again, I apologize that this issue is presented within this platform but the truth must be told in effort of restoring what belongs to the Drug Induced Homicide Inc.

I would like to address a recent comment suggesting that Matt Capelouto's associates have direct connections to inside matters related to the ongoing investigation, and that there is no case or evidence against him. This assertion is not only misleading, but it undermines the integrity of the investigative process.

It is crucial to emphasize that law enforcement agencies typically do not disclose information related to active criminal investigations to individuals within the community, especially not in a manner that is undocumented in official reports. Such practices would compromise the investigation and violate standard protocols designed to protect the integrity of the case.

We must remain vigilant and rely on factual information rather than rumors or unfounded claims. It is our responsibility to uphold the truth and ensure that those affected by these events are treated with the respect and dignity they deserve.

Facts

Watch attached documentary

https://youtu.be/EAKDFP5tZ0k?si=B1LUn9v1hbD06_M5

Josh Haskell

a.

86. On December 26, 2024, Ms. Almanza posted on her personal Facebook page to encourage

individuals to file a complaint with the California Attorney General Rob Bonta's office and

provided the false statements that such individuals should provide in their complaint,

*"Should you wish to submit a complaint related to any donations you made, fundraisers*

*hosted, merchandise purchased of Drug Induced Homicide, Inc., please direct your email to*

*rct@doj.ca.gov,*" *"Summary of Allegations Against Matt Capelouto former president of Drug Induced Homicide Inc. and after being voted off the board, Mr. Capelouto engaged in the following actions: Withholding Financial Transparency, Refused to disclose financial records despite repeated board requests…" and "Seized over $50,000 in donations intended to support DIH's mission."*



Ter Bear is with **Drug Induced Homicide Inc.** and **4 others.**
December 26, 2024 ·

If you have previously filed a complaint with the California Attorney General Rob Bonta office, please check your email for a response.  A complainant shared that they received a response from the Attorney General's Office.  Check your spam as well.

Should you wish to submit a complaint related to any donations you made, fundraisers hosted, merchandise purchased of Drug Induced Homicide Inc., please direct your email to rct@doj.ca.gov

Organization Details:
EIN: 85-0772680
Location: Temecula, California, United States
Public Charity Status: 170(b)(1)(A)(vi)
ID: #31954
Effective Date: March 26, 2020
Note: Unlawfully rebranded to Stop Drug Homicide.

Thank you for your continued support.

Summary of Allegations Against Matt Capelouto former president of Drug Induced Homicide Inc. and after being voted off the board, Mr. Capelouto engaged in the following actions:

Withholding Financial Transparency

Refused to disclose financial records despite repeated board requests.
Failed to provide a proper accounting of foundation donations and expenses, raising serious concerns about misappropriation of funds.
Misrepresentation of Merchandise Sales

Sold DIH-branded merchandise through his personal businesses, Impulse Apparel and Same Day T-Shirt Printing, at inflated prices.
Falsely advertised that proceeds from sales would benefit DIH, yet no portion of the funds was properly allocated to the foundation.
Posting Politically Charged Content

Used DIH's official platforms to post politically divisive content without board approval, violating the nonprofit's mission of impartial advocacy and support.
Governance Violations

a.    Failed to amend DIH's articles of incorporation to reflect board-approved members, as cited on the

87. On January 1, 2025, Ms. Almanza continued her false narrative and false accusations against Mr. Capelouto when she shared a part of the *DIH – The Rift* video on the druginducedhomicide TikTok account with the false statement *"Matt Capelouto, Why is our website druginducedhomicide.org been held hostage? Why was Drug Induced Homicide, Inc. rebranded to Stop Drug Homicide? Where is the $60K+ in donations of Drug Induced Homicide, Inc? why the demand for an NDA?"*

COMPLAINT

a.

88. After seeing Ms. Mareka Cole (hereinafter "Ms. Cole") speaking out about the allegations against Mr. Capelouto and defending Mr. Capelouto, Ms. Almanza made a post on the Drug Induced Homicide Inc Facebook page on January 14, 2025, that Ms. Cole's actions and statements were bullying and defamatory in nature, that Mr. Capelouto has failed to address his own allegations, and Mr. Capelouto was using Ms. Cole to shield himself against the allegations, *"Your actions can be perceived as bullying..." "These posts have been reported to Attorney General Rob Bonta & the Riverside County Sheriff's Office due to their defamatory nature," "It is troubling to see you defending Matt Capelouto, a man who has*

*consistently failed to address the serious allegations against him with truth," and "...he may be using you to shield himself..."*



Ter Bear
January 14 · 🌐

Stop Drug Homicide Rep #marekacole,
Stop with the attacks of the board of Drug Induced Homicide Inc. Your actions can be perceived as bullying, and I want to make it clear that this will not go unaddressed. These posts have been reported to Attorney General Rob Bonta & the Riverside County Sheriff's Office due to their defamatory nature.

It is troubling to see you defending Matt Capelouto, a man who has consistently failed to address the serious allegations against him with truth. Your continued support raises questions about the motivations behind his actions and the potential consequences for you. Are you aware that he may be using you to shield himself while you put your own credibility at risk?

I believe it is essential to stand against behavior that can harm others, and I urge you to reconsider your approach.
It's comical that you had zero to say when I spoke out at the DEA summit about Matt hijacking Drug Induced Homicide Inc. You stood 4 feet from me & said nothing.
Rachel is a beautiful person & bereaved mother within our community.  Show some respect!
Ask your buddy to show a little transparency.  He won't though because he can't provide this community with any defense for his actions when removed from the board.
Again, I apologize to our community for this continued distraction.
Thank you Carey Downs Murray & Linda Siedlinski for supporting DIH, Inc in Mareka's slanderous post.  I know she's deleted the comments & blocked the ppl speaking the truth.
Thank you

    a.

89. On March 11, 2025, Ms. Almanza posted to her personal Facebook page false statements that Mr. Capelouto intentionally harmed the community of individuals that has lost loved ones the drug-related deaths when he refused to return the Drug Induced Homicide domain and unlawfully took over the EIN number for the non-profit, *"Matt Capelouto's refusal to return my domain druginducedhomicide.org to its rightful owner, fully aware of its unlawful acquisition, has caused immeasurable suffering to a community of bereaved families."*

> **Ter Bear**
> January 14 · 🌐
>
> Stop Drug Homicide Rep #marekacole,
> Stop with the attacks of the board of Drug Induced Homicide Inc. Your actions can be perceived as bullying, and I want to make it clear that this will not go unaddressed. These posts have been reported to Attorney General Rob Bonta & the Riverside County Sheriff's Office due to their defamatory nature.
>
> It is troubling to see you defending Matt Capelouto, a man who has consistently failed to address the serious allegations against him with truth. Your continued support raises questions about the motivations behind his actions and the potential consequences for you. Are you aware that he may be using you to shield himself while you put your own credibility at risk?
>
> I believe it is essential to stand against behavior that can harm others, and I urge you to reconsider your approach.
> It's comical that you had zero to say when I spoke out at the DEA summit about Matt hijacking Drug Induced Homicide Inc. You stood 4 feet from me & said nothing.
> Rachel is a beautiful person & bereaved mother within our community.  Show some respect!
> Ask your buddy to show a little transparency.  He won't though because he can't provide this community with any defense for his actions when removed from the board.
> Again, I apologize to our community for this continued distraction.
> Thank you Carey Downs Murray & Linda Siedlinski for supporting DIH, Inc in Mareka's slanderous post.  I know she's deleted the comments & blocked the ppl speaking the truth.
> Thank you

    a.

90. Further, Ms. Almanza defamed Mr. Capelouto by stating he is an unethical individual who lacks empathy for those suffering, *"Such behavior is not merely unethical; it reveals a profound lack of empath for those suffering."*

91. As a result of Ms. Almanza creating such a post, the false and defamatory post was shared with additional third parties when another Drug Induced Homicide member, Ms. Kat Orr, shared the post to another Facebook group, *IZZYS ARMY ~ FED UP WITH FENTANYL ~ THE DEA CONNECTION*.

COMPLAINT

a.

92. On April 5, 2025, Ms. Almanza shared in the Drug Induced Homicide, Inc. - Public Group the link to the *DIH – Trilogy* along with falsely stating that Mr. Capelouto maliciously and unlawfully took control of the non-profit and intentionally tried to bury the truth. Ms. Almanza claims that the video more than a documentary, insinuating that it is the full truth. *"This Is More Than a Documentary"* and *"former board members Matt and Christine Capelouto unlawfully seized control of Drug Induced Homicide, Inc., rebranding it and*

1

2

*diverting its purpose while its founder was recovering from emergency surgery following*

*double mastectomy."*

3

4

5

6

7

8

9

10

a.

11

12

13

14

15

16

17

18

19

b.

20

---

### Drug Induced Homicide Inc.'s Post                                                    ✕

  **Drug Induced Homicide, Inc.- Public Group**
Drug Induced Homicide Inc. · April 5 · 🌐                                                  •••

**This Is More Than a Documentary.**

**It's a Love Letter, a Blueprint, and a Call to Arms.**

This film—produced by Glen Muse of Texas Pictures—honors 18-year-old Sydney Schergen,
poisoned by an illicit drug, and the unstoppable force of a parent in the aftermath. A 28-year veteran
of the Chicago Police Department, Terry turned her pain into purpose, forging a movement to shift
the narrative from "accidental overdose" to what these deaths truly are: **homicides**.

This documentary is more than a story. It is a **love letter** to Sydney. A **blueprint** for justice. A **call to
arms** for every family shattered by this epidemic. It exposes the truth behind the poisoning of
America and demands a seismic shift within our judicial system—one that investigates these cases
criminally and prosecutes everyone in the chain of delivery.

criminally and prosecutes everyone in the chain of delivery.

However, what began as a mother's deeply personal pursuit of justice—painstakingly built into a
national movement—was torn away in an act of unthinkable betrayal by another bereaved family.
In an act that has left us stunned, heartbroken, and outraged, former board members Matt and
Christine Capelouto unlawfully seized control of Drug Induced Homicide, Inc, rebranding it and
diverting its purpose while its founder was recovering from emergency surgery following double
mastectomy. The Capelouto's didn't just take a name—they stole a mission, a voice, and a lifeline
for families across the nation who were counting on it.

They tried to bury the truth.
They tried to remove the founder who agreed to their request to collaborate.
**But we will not be silenced.**

We refuse to sit idle. We will not stand by as what was built with love, sacrifice, and community is
stripped away. We will not allow this betrayal to continue unchecked within our community of
grieving families and within our judicial system..

What follows is a betrayal so cruel, so unimaginable, that unless you've lived it, it's hard to believe.
**What kind of bereaved parents would commit such an egregious act against the very
community they once claimed to serve?**

---

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14



community they once claimed to serve?

And so, Drug Induced Homicide Inc. was forced to begin again—reborn through truth, transparency, and unshakable resolve—under our new domain: **PoisoningOfAmerica.org**.

We are rebuilding, stronger than ever, fueled by the love of our children and the strength of families who will never stop demanding justice. Justice for our children and justice for Drug Induced Homicide. Inc.

"The only thing necessary for the triumph of *evil* is for *good men* to *do nothing*"

This isn't just Sydney's story.
It's all of ours.

Thank you for the nearly decade of support.

https://www.youtube.com/watch?v=mQ1MtFbtsO0

YOUTUBE.COM

c.

15   93. Ms. Almanza has intentionally sought out to share specific false and defamatory video on
16       any post that sheds even the slightest positive light on Mr. Capelouto and Stop Drug
17
18       Homicide.
19   94. On May 10, 2025, Ms. Almanza shared on the Drug Induced Homicide Inc. Facebook page
20       that Stop Drug Homicide was officially current in California's Registry and then
21       intentionally and maliciously stated that Mr. Capelouto had not shared the financial
22       information, insinuating that once again Mr. Capelouto was acting in a criminal and/or
23       immoral act as he was hiding information, *"Stop Drug Homicide is now current on the*
24       *California Registry although financial information has yet to be posted."*
25
26
27
28

a.



95. After creating her post, Ms. Almanza then shared the link to the *DIH – Trilogy* YouTube video to further her false narrative.

a.

96. On May 25, 2025, Calvery Chapel Coconut Crab Facebook page and The PROOF Blog Facebook page each shared a video interview by Falling to Freedom which discussed Alexndra's Law with Mr. Capelouto and his journey.

97. After seeing the posts, Ms. Almanza shared the link to the *DIH – Trilogy* YouTube video in hopes to discredit Mr. Capelouto.



a.



b.

98. On May 29, 2025, Ms. Almanza posted to the Drug Induced Homicide Inc. Facebook page that they were in the process of rebuilding the Victim Archive on the website after Mr. Capelouto deactivated the domain without authorization, *"We are in the process of rebuilding the Victim Archive on our website after the unfortunate loss of all previously submitted content, which occurred when former board member Matt Capelouto deactivated our domain without authorization."* Ms. Almanza could have simply shared the news without false stating that Mr. Capelouto was the cause of them losing such information.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

✕  Drug Induced Homicide I...  🔍

**Drug Induced Homicide Inc.**  ···
1d · 🌐

We are in the process of rebuilding
the Victim Archive on our website
after the unfortunate loss of all
previously submitted content, which
occurred when former board
member Matt Capelouto deactivated
our domain without authorization. ✓

To honor your loved ones and ensure
their stories continue to be seen,
heard, and remembered, we kindly
ask that you resubmit the following
via the link below:

A clear photo of your loved one
A brief summary of the case
A short tribute highlighting who they
were—their hobbies, passions,
dreams, and the life that was stolen
Please use the link below to upload
your submission.

**Write a comment...**

a.

99. The most recent false and defamatory post occurred on June 14, 2025, when Ms. Almanza

deliberately and elaborately stated the false narrative that she has continued for almost one

year.

100.    Ms. Almanza again falsely accused Mr. Capelouto of deceiving their board

members, donors, and families by intentionally taking control of $56,000.00, rebranding the

non-profit EIN number, and deactivating the website, *"...Matt was actively deceiving our*

*board, our donors, and the families we serve." and " Instead of accepting that decision, he*

*retaliated – unlawfully seizing control of over $56,000, rebranding our non-profit's IRS EIN*

*(#85-0772680) from Drug Induced Homicide Inc. to Stop Drug Homicide, and deactivating*

*our official website domain (druginducedhomicide.org)."*



Ter Bear is with **Drug Induced Homicide Inc.**
June 12 at 7:42 AM · 🌐

One year ago today, I was rushed into emergency surgery—fighting for my life.
Just eight days after undergoing a double mastectomy, I was home alone for the first time when I noticed something was wrong: bleeding from the surgical site, a drain filled with blood, and severe swelling in my chest. My oncologist confirmed a vessel bleed, likely brought on by extreme stress—stress I firmly believe was triggered by the devastating betrayal I had just been alerted of.
That betrayal came from former Drug Induced Homicide Inc. board member, Matt Capelouto.
While I was recovering from major surgery, Matt was actively deceiving our board, our donors, and the families we serve. After we uncovered his actions, he was unanimously voted off the board and formally notified via a recorded Zoom call.
Instead of accepting that decision, he retaliated—unlawfully seizing control of over $56,000, rebranding our nonprofit's IRS EIN (#85-0772680) from Drug Induced Homicide Inc. to Stop Drug Homicide, and deactivating our official website domain (druginducedhomicide.org). He did this—and more—while I was still recovering from surgery, and while our foundation and its mission were left in disarray.
We have since filed formal complaints with Chase Bank, the IRS, the Attorney General, the District Attorney, and local law enforcement.
I have personally spent thousands of dollars trying to recover what was stolen from a community I built in 2015 to honor my daughter, who was killed by an illicit drug poisoning at just 18 years old. This foundation is my life's work—a tribute of love and justice born from unspeakable loss.
Matt and his spouse, Christine, should never again be entrusted with any role in a nonprofit. Their actions inflicted real, lasting harm on already grieving families.
And to make matters worse, through their attorney, they offered to return $25,500 of donor funds and our domain—but only if we signed a Non-Disclosure Agreement (NDA).
Why the NDA, Matt and Christine? What are you trying to hide?
Not on my watch.
I will not be silenced. I choose truth, transparency, and accountability—because our mission is too important, and our families deserve better.
You are bad actors, and the public must be made aware of your egregious, self-serving conduct. The damage you've caused is not only unethical—it's criminal. And I will not stop until justice is served.
To my board, my family, friends, and our supporters—thank you.
God bless our angels.

a.

101.    Further, Ms. Almanza stated that Mr. Capelouto was attempting hide information

when he civilly offered to split the balance in the non-profit account and return the domain if

all parties sign a non-disclosure agreement, *"And to make matters worse, through their*

*attorney, they offered to return $25,500 of donor funds and our domain – but only if we sign*

*a Non-Disclosure Agreement (NDA). Why the NDA, Matt and Christine? What are you*

*trying to hide?"*

102.    Instead of agreeing to a very civil and standard NDA, Ms. Almanza wanted Mr. Capelouto to turn over all funds, the domain, and non-profit number, and be allowed to continue to falsely defame him.

103.    Mr. Capelouto has endured the false and defaming statements by Ms. Almanza which has contributed to a decline in his business personal business.

104.    Mr. Capelouto is actively trying to shed light on a serious matter that needs to be addressed in our nation. Instead of Ms. Almanza trying to support Mr. Capelouto and/or focusing on her non-profit, she has taken to defaming him with false and unsupported statements.

**COUNT ONE – DEFAMATON FOR STATEMENTS MADE ON SOCIAL MEDIA**

105.    Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein.

106.    Ms. Almanza published numerous false and defamatory statements regarding Mr. Capelouto and Stop Drug Homicide with dates ranging from June 26, 2024, through June 14, 2025. The posts in which these statements are made are still fully assessable and is available to a worldwide audience as Ms. Almanza's personal Facebook account and the Drug Induced Homicide Facebook pages are not private accounts.

107.    Additionally, Defendant published as part of these statements the following information on numerous dates all of which still remains published:

a.    "*deactivated our website and our ability to recover. In addition, Matt has created a separate "Drug Homicide" website and private "Stop Drug Homicide California" Facebook page. These actions were designed to mimic our foundation's identity by omitting the term "Induced," with the clear intent of undermining our foundation.*"

- 46 -
COMPLAINT

b.  *"Additionally, it's with regret we inform you that all funds raised in support of Drug Induced Homicide have been seized by Matt Capelouto."*

c.  *"...hijacked and rebranded as a California based foundation titled Stop Drug Homicide California by a former board member. These despicable actions have resulted in the loss our 501(c)3 status, its domain, over $60,000 in donations and much more. The former board member rebranding our EIN # to his new California based foundation..."*

d.  *"was voted off the board and given written and verbal notice of his removal from the board in a recorded Zoom call" and "Drug Induced Homicide Foundation has been rebranded to a California based foundation titled Stop Drug Homicide utilizing the same EIN # 85-0772680 without authorization of its board..."*

108.    These statements are of and concerning Mr. Capelouto as he is blatantly named in the statements made by Ms. Almanza and/or those who support her false narrative. Additionally, Ms. Almanza blatantly referred to Mr. Capelouto in these statements, and those who know Mr. Capelouto and/or read these statements knew the person Ms. Almanza was speaking about.

109.    These statements by Ms. Almanza which state that Mr. Capelouto acted in criminal and/or immoral acts are false:

a.  Mr. Capelouto did not establish Stop Drug Homicide in an attempt to maliciously mimic the non-profits' identity nor to undermine its foundation.

b.  Contrary to the numerous accusations, Mr. Capelouto has not seized the funds raised for the non-profit.

c.  Mr. Capelouto held the authority to rebrand the 501(c)3 from Drug Induced Homicide to Stop Drug Homicide as he was the president of the non-profit and the one who

- 47 -

COMPLAINT

established the formal paperwork for the non-profit. Further, Mr. Capelouto did not take the $60,000 of donation funds as alleged.

    d.   Mr. Capelouto was not voted off the non-profit board as the individuals who claim to be the board were not formally a part of the 501(c)3 board resulting in their inability to actually vote Mr. Capelouto off the board. Due to the blatant differing views, Mr. Capelouto stepped away from the non-profit.

110.    The substantial danger of injury to Mr. Capelouto's reputation from Ms. Almanza's false statements is readily apparent. Such statements would tend to harm the reputation of another as to lower the individual's reputation within a community and/or to deter third persons from associating or dealing with the individual.

111.    By making such statements to third parties, Ms. Almanza has harmed Mr. Capelouto's reputation.

112.    At the time of posting said statements, Ms. Almanza knew, or should have known, the statements were false.

113.    Ms. Almanza's false statements are defamatory per se as they insinuate that Mr. Capelouto committed a crime involving moral turpitude for which Mr. Capelouto, if the charges were true, could be indicted and punished. Additionally, Ms. Almanza's false and defamatory statements have prejudiced Mr. Capelouto's reputation within the non-profit community, entitling Mr. Capelouto to presumed damages.

114.    As a direct and proximate result of these false and defamatory statements by Ms. Almanza, Mr. Capelouto has suffered damages, including, inter alia, injury to his reputation, harm to his ability to carry on his profession, embarrassment, humiliation, and emotional distress, in an amount to be determined at trial.

115.    Ms. Almanza's actions were malicious, willful, wanton, and evidence of conscious disregard for Mr. Capelouto's rights. Mr. Capelouto is entitled to punitive damages.

**COUNT TWO - DEFAMATON FOR STATEMENTS MADE IN THE YOUTUBE VIDEO**
*DIH - statements*

116.    Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein.

117.    Ms. Almanza participated in an interview, along with other individual who support her false narrative, where numerous false and defamatory statements regarding Mr. Capelouto and Stop Drug Homicide were stated. The video, *DIH – statements* was shared with Mr. Muse and Texas Pictures and was published on November 18, 2024, on the public domain Youtube.com. The video, which is still fully assessable, is available to a worldwide audience as the YouTube account is not a private account.

118.    Additionally, Defendant published as part of its YouTube page the following information which still remains published:

   a.   *"I don't understand how you can steal a foundation"*

   b.   *"Matt please return the the dollars we understand you've taken and the EIN number to its rightful owner"*

   c.   *"shortly after being brought onto the board I was asked to serve as the board secretary"*

   d.   *"when Matt filed for the non-profit status he made the decision to uh name uh directors of the board that were not affiliated with the organization uh one being his spouse and the other being I believe a friend from college"*

   e.   *"Matt having um advertised in social media posts as well as um leading uh language that was on the website that the Assumption was that the drug induce homicide Foundation merchandise that was um supported by Matt's personal business impulse*

- 49 -
COMPLAINT

*apparel and Same Day t-shirt that um Matt was carving out uh some proceeds to go*

*from the same of those items to the organization"*

    f.   *"that the um the assumptions were that this was being done with the intention of*

*Matt uh outing the founder and taking and seizing the organization and taking full*

*control of it"*

119.    These statements are of and concerning Mr. Capelouto as he is blatantly named in the statements made by Ms. Almanza and/or those who support her false narrative. Additionally, Ms. Almanza blatantly referred to Mr. Capelouto in these statements, and those who know Mr. Capelouto and/or read these statements knew the person Ms. Almanza was speaking about.

120.    These statements by Ms. Almanza which state that Mr. Capelouto acted in criminal and/or immoral acts are false:

    a.    Mr. Capelouto did not steal the foundation.

    b.    Mr. Capelouto established the formal founding for the non-profit giving him authority over the EIN number. Further Mr. Capelouto has not wrongfully taken any money from the non-profit as alleged.

    c.    Ms. Beitzel Allen was not appointed board secretary by individuals formally on the non-profit board giving her no authority over the non-profit.

    d.    Mr. Capelouto established the non-profit status giving him the authority to appoint the appropriate people to the board. Mr. Capelouto's relationship to those individuals is a moot point.

    e.    The merchandise produced by Mr. Capelouto's company for the non-profit and was sold has been appropriately created to the non-profit.

f.   Mr. Capelouto has never intentionally, maliciously or otherwise, attempted to remove or keep Ms. Almanza from the organization.

121.    The substantial danger of injury to Mr. Capelouto's reputation from Ms. Almanza's false statements is readily apparent. Such statements would tend to harm the reputation of another as to lower the individual's reputation within a community and/or to deter third persons from associating or dealing with the individual.

122.    By making such statements to third parties, Ms. Almanza has harmed Mr. Capelouto's reputation.

123.    At the time of posting said statements, Ms. Almanza knew, or should have known, the statements were false.

124.    Ms. Almanza's false statements are defamatory per se as they insinuate that Mr. Capelouto committed a crime involving moral turpitude for which Mr. Capelouto, if the charges were true, could be indicted and punished. Additionally, Ms. Almanza's false and defamatory statements have prejudiced Mr. Capelouto's reputation within the non-profit community, entitling Mr. Capelouto to presumed damages.

125.    As a direct and proximate result of these false and defamatory statements by Ms. Almanza, Mr. Capelouto has suffered damages, including, inter alia, injury to his reputation, harm to his ability to carry on his profession, embarrassment, humiliation, and emotional distress, in an amount to be determined at trial.

126.    Ms. Almanza's actions were malicious, willful, wanton, and evidence of conscious disregard for Mr. Capelouto's rights. Mr. Capelouto is entitled to punitive damages.

**COUNT THREE – TORTIOUS INTERFERENCE WITH BUSINESS CONTRACTS**

127.    Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein.

128.     Ms. Almanza knew of Mr. Capelouto and that he is still actively pursuing positive support for his non-profit Stop Drug Homicide and the awareness he is actively trying to bring to light.

129.     Ms. Almanza intentionally wrote/or caused to be published to third person the false and defamatory statements referenced herein about Mr. Capelouto resulting in interference with the potential funds to be raised for the non-profit Stop Drug Homicide and the awareness it brings.

130.     On numerous dates Ms. Almanza posted false and defamatory statements along with participated in interviews to promote her false narrative. Ms. Almanza knew at the time of making the statements that it contained false and damaging information regarding Mr. Capelouto. Further, Ms. Almanza knew that her statements alleged that Mr. Capelouto had acted criminally and/or immorally in regard to Drug Induced Homicide and the bank account that was connected to it.

131.     Ms. Almanza intentionally set forth to make the statements alleged herein for their own personal satisfaction against Mr. Capelouto.

132.     Ms. Almanza's actions were conducted out of personal ill will and hospitality towards Mr. Capelouto.

133.     Ms. Almanza acted in actual and legal malice and without legal justification. Ms. Almanza has interfered with Mr. Capelouto's business and his future in bringing awareness to fentanyl related deaths through his non-profit Stop Drug Homicide.

134.     Ms. Almanza's actions were malicious, willful, wanton, and evidence of conscious disregard for Mr. Capelouto's rights. Mr. Capelouto is entitled to punitive damages.

135.     The facts alleged above constitute tortious interference with contractual rights against Mr. Capelouto. Mr. Capelouto has suffered special damages, including pecuniary

COMPLAINT

loss as a proximate result of Ms. Almanza's interference with his business contracts and the awareness Mr. Capelouto is attempting to bring to fentanyl related deaths through his non-profit Stop Drug Homicide. Mr. Capelouto has sustained harm, including damages in an amount to be determined at trial.

### JURY TRIAL DEMAND

Plaintiff Matthew Capelouto and Plaintiff Stop Drug Homicide hereby demands a jury trial on all issues so triable.

### PRAYER

WHEREFORE, Plaintiff respectfully requests that the Court enter an award in Plaintiff's favor and against Defendant, as follows:

1. Award Plaintiff's compensatory damages of not less than $75,000.00 or in such additional amount to be proven at trial;

2. Award Plaintiff's punitive damages to the maximum extent permitted by the laws of this State, but not less than $75,000.00;

3. Award Plaintiff's all of his expenses and costs, including attorneys' fees; and

4. Grant such other and further relief as the Court deems appropriate.

This the _____ day of June 2025.

**RANCHOR HARRIS LAW, PLLC**

/s/ S. Ranchor Harris_____
S. Ranchor Harris
N.C. Bar No. 21022
Ranchor Harris Law, PLLC
1784 Heritage Center Drive
Suite 204-E
Wake Forest, NC 27587
919-249-5006 (Direct Line)
919-589-4845 (Facsimile)
ranchorharris.com

- 53 -
COMPLAINT

ranchor@ranchorharris.com

Law Office of Robert P. Karwin

/s/ Robert P. Karwin_____
Robert P. Karwin
Bar No. 190573
Law Office of Robert P. Karwin
29800 Bradley Road
Menifee, CA 92584
Telephone: 951-246-4514
Facsimile: 951-346-3684
rkarwin@karwinlaw.com

COMPLAINT